## BARBOUR *v.* PATTERSON.

LIS PENDENS—COSTS—EXECUTION—MORTGAGES — LIEN — PRIORITY —PARTITION.

    Where complainant in partition files a lis pendens at the time of filing his bill, it operates to make his execution levy on the interest of the defendants for costs superior to the lien of defendants' solicitor under a mortgage given after commencement of suit to secure payment of his fees (§§ 8980, 11080, 3 Comp. Laws), though the sheriff by his notice levies upon and sells only the interest of the defendants in the premises at the time of the levy. OSTRANDER and MOORE, JJ., dissenting.

Appeal from Calhoun; Hopkins, J. Submitted October 12, 1905. (Docket No. 39.) Decided September 20, 1906.

Bill by Levi L. Barbour against John C. Patterson to remove a cloud from the title to land. From a decree for complainant, defendant appeals. Affirmed.

*George O. Tackels*, for complainant.

*Edwin J. Dennison* (*John C. Patterson*, of counsel), for defendant.

McALVAY, J. This case grows out of certain proceedings upon an execution issued out of this court in the case of *Hooper* v. *McAllister*, 115 Mich. 174. That was a case for the partition of a certain farm in Calhoun county in which complainant, Hooper, claimed an undivided five-sixths interest. From a decree granting him but a one-half interest, he appealed to this court from the circuit court for Calhoun county, and his title to an undivided five-sixths interest was established. He was granted costs of both courts, which were taxed in this court, and an execution issued, and was levied March 19, 1898, upon all of the interest of defendants in said land. Partition of the property was ordered and the case was referred by this court to the circuit court commissioner of Calhoun county to take proofs and report thereon. It was remanded to the circuit court for the enforcement of the decree. Hooper at the commencement of that suit, May 19, 1894, filed a notice lis pendens. The defendant in the suit at bar was solicitor for the defendants in the *Hooper Case* in the circuit court and in this court. The *Hooper Case* proceeded in Calhoun circuit to a final determination by partition of the lands according to the decree of this court. The one-sixth interest of the defendants, Alice, Orlando B., and Earl McAllister, was set apart to them by a definite description containing 37½ acres. Under said execution levy the sheriff, November 2, 1900, to satisfy the same, sold and deeded all the right, title, and interest said defendants had in said 37½ acres March 19, 1898, for the sum of $273.42. The premises so sold were not redeemed. While the *Hooper Case* was pending, and before partition, on December 30, 1897, the defendants McAllister gave their solicitor, John C. Patterson, a mortgage on their undivided one-sixth of the entire premises to secure a note given to him for professional services in the sum of $400. This mortgage was duly recorded December 31, 1897. Complainant, Barbour, in the suit at bar acquired his title to such land so sold on execution by quitclaim deed from Hooper and wife. He filed his bill in this suit against

defendant, Patterson, claiming that said mortgage was a cloud upon his title, and asked that the same be set aside and canceled.

The question to determine in the case at bar is whether, as between the parties to this suit, the notice lis pendens filed in the *Hooper Case* operated to make his execution levy for costs in that case a lien upon these premises superior to the lien of Mr. Patterson, the mortgagee, who had actual and constructive notice, not only of the lis pendens, but also of all proceedings in that suit. The costs taxed in this court, for which the execution issued under which the sale was made, were the usual taxed costs in chancery cases, and the levy of the execution was made subsequent to the recording of defendant Patterson's mortgage in question. It is not claimed by the complainant that defendant's mortgage was given in fraud of the rights of the judgment creditors. The question discussed at length by defendant as to the necessity of filing a bill in aid of execution within one year after the levy is therefore not before the court. The sole question to be determined is which of the liens has priority. On the confirmation of the partition by the circuit court in the *Hooper Case*, the costs made subsequent to the decree of this court enforcing the same were all paid by the receiver, who in the meantime had been appointed to care for the property, and a small balance in his hands was paid to the parties according to their respective interests. The rights of the parties in the *Hooper Case* were settled and determined in this court upon the decree then entered. The subsequent proceedings were taken in execution of that decree. *Shepherd* v. *Rice*, 38 Mich. 557, and cases cited. Costs in that decree were not apportioned among defendants, but were allowed complainant for both courts and taxed in the usual manner. The McAllisters' interest taken together was declared to be a one-sixth interest, and on the partition under the decree was set apart to them as such one-sixth, in which partition they have acquiesced. The circuit court could not under the parti-

tion statute change this decree for costs made by this court. It had no jurisdiction to ascertain and determine or apportion the same. Where there is a sale of lands in cases of partition, it is clear that the statute contemplates a payment of the costs out of the proceeds of the sale, including solicitor's fees in addition to other fees and charges allowed by the statute, and—

"Where the premises are not sold but are partitioned, then such reasonable charges are to be apportioned among the parties in proportion to the respective interests in the estate partitioned." *Greusel* v. *Smith,* 85 Mich. 574.

It would appear from this case that ordinary taxable costs are included. Section 11080, 3 Comp. Laws, provides:

"When a decree confirming the partition made by any commissioners shall be entered as provided in this chapter, the court shall adjudge and decree that each of the parties concerned therein, other than the complainants, pay to the complainants a proportion of the costs and charges of the proceedings to be ascertained by the court according to the respective rights of the parties, * * * and upon such decree execution may issue as in other cases, and may be levied upon the property of the parties respectively charged with such costs, and upon any share or part of the premises allotted on any such division to any owner unknown or not named," etc.

Complainant's priority of lien rests, then, upon the proposition that the lis pendens filed at the time the *Hooper Case* was commenced was notice to defendant of all of Hooper's rights and interests and also of the ordinary and usual costs incurred incident to establishing the same. In this State a notice lis pendens duly filed and recorded, and the original papers filed in the cause "shall be notice to all persons, of the liens, rights and interests acquired by or involved in such proceedings, and all subsequent owners or incumbrancers shall take subject to such liens, rights, or interests." Section 8980, 3 Comp. Laws.

Costs are incident to every proceeding or suit at law and in chancery. They are sometimes fixed by statute or rule, and sometimes are in the discretion of the court. This statute also includes all levies and attachment liens. No one has ever questioned but that the costs in attachment cases would be considered as part of the judgment to be realized from the land and by the notice protected as against a subsequent incumbrancer. To hold that costs in a chancery case are not included and protected by a notice lis pendens under the statute above quoted would be a strained construction. This defendant had not only constructive notice of this lis pendens, but actual notice. He was an active participant in all the proceedings as solicitor for defendants.

There are two questions in the case:

1. Did complainant's grantor by his lis pendens acquire a lien, right, or interest in these premises for his costs?
2. Has that lien, right, or interest been lost?

It must be conceded that the lis pendens was notice of complainant's liens, rights, and interests involved in the proceedings and incidentally all ordinary and usual costs. Up to the time of the levy of execution for costs under the decree of this court there can be no question but that such lien continued. No question is raised as to the regularity of the proceedings, or the right of this court to allow complainant his costs upon the favorable outcome of his appeal. Defendant does not seriously contend but that such costs would necessarily be included within the protection of the lis pendens. The contention is that because complainant, under execution from this court by what has been called "adversary" proceedings, levied upon the interest of the defendants in the lands involved in the partition suit, and proceeded to sell the same, all right under and by virtue of the lis pendens is lost to him, and that this becomes a direct and original proceeding on his part, and he now occupies no better position than any other creditor of the defendants in that suit.

Under the partition statute above quoted, the circuit court, upon a final disposition of the case, could have decreed costs such as these to complainant therein and against defendants "according to the respective rights of the parties." *Greusel* v. *Smith*, supra. The fact that these costs were decreed by the appellate court cannot affect in any way complainant's right to collect the same. We think that the fallacy of appellant's reasoning lies in the fact that the execution proceedings are divorced by argument from the case in which the costs were decreed. It is a proceeding to collect costs duly decreed in the case in which such costs were protected by a valid lis pendens. The fact that the sheriff by his notice levied upon and sold the interest of defendants in the premises at the time of the levy is the only irregularity which tends to impeach complainant's claim. This undoubtedly was done by the sheriff in following the usual form of blank used on levy of execution. It, however, was not misleading to this defendant. The notice apprised him of the case in which the costs arose, in the taxation of which he participated as solicitor of record, and the levy was upon the interest of defendants in the land involved, and upon which pendente lite, with full notice of all the proceedings, he had taken his mortgage.

We therefore hold that his rights under his mortgage were subject to the rights of complainant acquired under the execution levy and sale in the *Hooper Case.*

The decree of the circuit court is affirmed, with costs.

CARPENTER, C. J., and GRANT and BLAIR, JJ., concurred with MCALVAY, J.

HOOKER, J. Whatever view may be taken of the authority of the court under 3 Comp. Laws, § 11080, to apportion the costs of the entire proceeding among the parties, according to their proportionate interests upon decree confirming partition, there may be manifest injustice in compelling a successful or indifferent and disinterested party to contribute to an unsuccessful one a

share of the expense of litigating a title, to determine the shares, and it is the general rule that the court need not, and in some States cannot lawfully, charge such costs to the fund or impose portions upon parties not responsible for the unwarranted contest. See *Coles* v. *Coles*, 13 N. J. Eq. 368; *McMullen* v. *Doughty*, (N. J. Eq.) 61 Atl. 265; Knapp on Partition, pp. 342, 343. Such appears to have been the English rule. See cases cited in 21 Am. & Eng. Enc. Law (2d Ed.), p. 1175, note 5. While in the United States the matter is largely discretionary, implying, perhaps, that the costs subject to apportionment may include those incurred in determining the extent of the respective shares as well as the expenses of making the partition. See 21 Am. & Eng. Enc. Law (2d Ed.), pp. 1177, 1178, and notes; 6 Current Law, p. 903. In the present case the preliminary decree made by this court included a determination that the complainant should recover his costs of both courts, to be taxed *against all defendants* and that execution therefor issue from this court, and the cause was remanded for further proceedings, to carry out the decree made here. This decree left no discretion in the circuit court as to the costs covered by it, and plainly indicates that the defendant should be charged with such costs. It was an ordinary decree for costs, with an award of execution, which we understand to have been issued and levied upon the one-sixth interest of McAllister, which was afterwards bid in at the execution sale by complainant, and he thereby acquired a title to the same, unless Patterson's mortgage has priority. This mortgage was given to counsel before the rendition of the first decree to secure his fees in the partition case. We may eliminate all questions pertaining to the lis pendens for counsel had personal knowledge of the nature of the proceedings, and is chargeable with notice of any lien which had attached under the law, by reason of the institution of the partition proceedings.

The only remaining questions are whether a lien does

attach in favor of a complainant in partition proceedings upon the shares of other parties for his costs, and, if so, whether there is any reason for saying that it does not apply to the decree of this court. We are not aware of any case that holds that the right to collect costs from the premises or fund is limited to the expense of the partition proper, as contradistinguished from the preliminary decree determining the respective interests. See *Coles* v. *Coles*, 13 N. J. Eq. 366; *Woglom* v. *Kant*, (N. J. Eq.) 61 Atl. 9; 4 Current Law, p. 902. These authorities are cited as indicative of the propriety of settling such questions in partition proceedings, and as showing no distinction, as to costs, incurred in the different phases of the proceeding.

Our statute (section 11080) makes none, providing in a general way, that, upon the final decree, the court shall apportion the costs, and that they shall be chargeable upon and enforceable against the respective shares. I think that this statute creates a lien from the beginning of the suit that cannot be avoided by a subsequent conveyance or mortgage. It may be said that the terms of the statute have not been complied with, because the final decree has not apportioned costs. Our understanding is that the costs of the partition proper were paid, and there was no occasion to refer to them in the decree. They are not in controversy here, and therefore it is unimportant. As to the costs which are involved here, the disposition of them made by this court precluded action by the circuit judge. The lien is imposed by the statute, not by the decree, and we think the law should be construed to cover all costs awarded in the case. There is nothing uncommon in statutes declaring judgments and decrees to constitute liens upon real estate, and there is manifest propriety in such a rule in partition cases. It follows that the decree of this court was the prior lien, and I therefore concur with my Brother McALVAY that the decree of the circuit court should be affirmed, with costs.

MONTGOMERY, J., concurred with HOOKER, J.

OSTRANDER, J. (*dissenting*). Complainant's grantor, owner of a personal judgment for costs against defendant's mortgagors, took out execution to collect the same and caused it to be levied upon all the title and interest of the execution debtors in premises in which said debtors owned an undivided share or interest in fee simple. At the date of the judgment there was a valid mortgage upon the same interest, executed December 30, 1897, and after the beginning of the suit in which the judgment for costs was recovered by the execution debtors, to the defendant here, which mortgage was duly recorded. Later, in October, 1899, the said premises were partitioned and land in severalty was set off to said execution debtors in lieu of the said undivided share and interest. Thereafter, in November, 1899, the sheriff sold to the execution creditor the premises so set off, to satisfy said execution, for about one-third of the actual value of the same. The purchaser conveyed the interest so acquired by quitclaim deed to the complainant in this suit, who filed his bill to cancel said mortgage, asserting that it and the record of it constituted a wrongful cloud upon his title. The proceeding in which the judgment for costs was secured was a proceeding to partition lands, but there was also involved a dispute as to the size or extent of the undivided interest of the complainant in the said premises. It was upon the determination of that contested question that the judgment for costs in favor of said complainant and against said defendants was recovered.

It is claimed that because the mortgage in question was given pendente lite the said judgment for costs and the execution lien were prior in effect to the lien of the mortgage. Independent of all other considerations, sale having been of the apparent interest of the execution debtors, the execution creditor should be held to have acquired only the equity of redemption in the premises. *Messmore* v. *Huggard*, 46 Mich. 558. But upon no theory of the case has complainant the right to have the execution levy treated as a lien superior to that created by the mort-

gage. A lis pendens was recorded when the bill in the partition proceedings was filed. This added nothing to the notice which the mortgagee, the defendant here, who was solicitor for defendants in the partition suit, was chargeable with. *Baker* v. *Pierson*, 5 Mich. 456. The purpose of recording notice of the pendency of a suit is to make the filing of the bill constructive notice to a purchaser of real estate of the claims thereto and therein asserted in the bill. The bill in question here asserted no interest in an undivided one-sixth of the premises, but admitted, and notified intending purchasers and incumbrancers of the fact, that the defendants owned an undivided one-sixth interest in fee simple. Such intending purchasers and incumbrancers, the bill praying for partition, were further notified by the statute that the entire premises might be ordered to be sold, or that said undivided interest might be set off in severalty, and, in either case, that a proportion of the mutual costs and charges of effecting said partition might become a first charge upon said interest. 3 Comp. Laws, § 11020. The statute, however, requires these costs and charges to be determined and apportioned by the court (section 11080), and does not contemplate that such costs and charges shall include adversary costs allowed to and taxed in favor of a party who is contesting with another, or with others, the size or extent of his own undivided interest. This was the construction put upon the statute by this court in awarding the costs (*Hooper* v. *McAllister*, 115 Mich. 174), and was the construction adopted by complainant's grantor, as is evidenced by what he did. A judgment for costs, like any other personal judgment, becomes a lien upon real property only by virtue of the contract which is being enforced by express statute provisions or by levy of execution. Executions to collect such judgments run first against the personal estate of the debtor. It is true that costs are, as a rule, usual incidents of litigation, and that notice of the pendency of a suit in chancery involves an understanding that one or other of the parties thereto may recover a

judgment therein for his costs. There is, however, no reasonable support for the doctrine that one may not take a conveyance from the defendant in such a suit of premises which, he is informed by the bill of complaint, belong to the defendant, and to which no claim is asserted, except at the peril of paying a judgment for costs in favor of complainant, thereafter to be rendered. The statute does not, in terms, postpone the title of the purchaser pendente lite to the payment of costs awarded as in adversary proceedings in the pending suit. 1 Comp. Laws, §.441, 3 Comp. Laws, § 8980. It does, in terms, postpone all incumbrances to the payment of a proportional share of the cost of the partition, in view of all of which and of the general rule that money judgments become liens upon real estate by levy only the court should not determine that a lien is, in effect, created by notice of the pendency of the suit for the costs which may be awarded to complainant.

The decree should be reversed, with costs of both courts, and the bill of complaint dismissed.

MOORE, J., concurred with OSTRANDER, J.