MURPHREE, JOHN A. H., Associate Judge.
This is an appeal from a decree quieting title to subsurface minerals in the vendor, where the vendee has been in the adverse possession of the surface of said lands for over seven years.
Frederick R. McConnel, the owner, conveyed the lands involved in this appeal to Florida Fruit Farms, a Missouri corporation, in the year 1912. A purchase money mortgage was executed in return. Thereafter, the name of Florida Fruit Farms was changed to Palmdale Land Company and the lands subdivided and sold to various parties, subject to the mortgage.
*607 In 1938, McConnel foreclosed the said mortgage, making Palmdale Land Company a defendant, but omitting to include the purchasers under Palmdale as defendants. A final decree of foreclosure was entered and the property sold to Frederick R. Mc-Connel at the Master’s sale. The sale was then confirmed by the Court.
In 1939, after the death of McConnel, his heirs conveyed, for a valuable consideration, the surface of said lands to Lykes Brothers, Inc., expressly reserving all oil, gas and sulphur beneath the surface of the lands, said reservation to become void if such minerals in paying quantities were not discovered prior to November 4, 1949. Oil in paying quantity was found in 1943.
Lykes entered into possession under the deed from the McConnel heirs and remained in the continuous possession of said lands for 19 years prior to this suit. Over that period of time Lykes performed all necessary acts, according to the statutes of Florida, to acquire title to said lands by adverse possession, with or without color of title.
The McConnel heirs concede that Lykes, through the duration and character of its possession, acquired title to the surface of the lands by adverse possession, but they maintain that Lykes’ possession of the surface has enured to their benefit insofar as title to the sub-surface minerals is concerned. And they also take the position that Lykes is estopped to claim the subsurface estate, having entered into possession of the lands under the McConnel deed which contained express mineral reservations in the grantors.
The chancellor in ruling in favor of the McConnel heirs had this to say in his final decree:
‘T. The defendant, Lykes Bros., Inc. is estopped in pais and in law from asserting title to the oil, gas and sul-phur underlying the lands described herein in derogation of the written deed under which it acquired possession of the surface of the lands, and this is especially true since it never gave any notice to the plaintiffs, prior to the filing of its Answer herein, that it claimed or intended to claim adversely to the plaintiffs. See Sanford v. Cloud (1880), 17 Fla. 558; Lake v. Hancock, 38 Fla. 53, 20 So. 811, 813; Clements v. Texas Company [Tex.Civ.App.], 273 S.W. 993, 1005; Moore v. Empire Land Company [181 Ala. 344], 61 So. 940; 31 C.J.S. [Estoppel § 127, p.] 395; 58 C.J.S. [Mines and Minerals § 135, p.] 223; 1 Am.Jur. 818; and 25 Texas Law Review 139, et seq.
“2. The adverse possession of the surface of the lands described herein by Lykes Brothers, Inc. and its corporate successor, Lykes Bros., Inc., established title to the underlying oil, gas and sulphur in the plaintiffs. See: Carlisle v. Federal Land Bank of New Orleans, 1953 [217 Misc. 289], 64 So.2d 142; McLendon v. Comer, Tex. [Civ.App.] 1947, 200 S.W.2d 427; and Clements v. Texas Company, supra.”
We are not unmindful of the general rule that where there has been no severance of the mineral estate from the surface estate possession of the surface is also possession of the minerals. Nor do we overlook Lykes’ contention that it claims title to the minerals through its possession of the surface by adverse possession, without reliance upon the McConnel deed as color of title. However, Lykes entered into possession of said lands under the Mc-Connel deed and for 19 years did nothing to al.ert the grantors to its claim to the subsurface minerals until too late for the Mc-Connels to re-foreclose the old Florida Fruit Farms mortgage, mentioned in the beginning. In this situation the Chancellor was correct in applying the doctrine of estoppel.
Affirmed.
ALLEN, C. J., and SHANNON, J., concur.